UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|                        |   |                      |
|------------------------|---|----------------------|
| JUANITA M. WINKELMANN, | : |                      |
|                        | : |                      |
| Plaintiff,             | : | NO. 1:08-CV-00419    |
|                        | : |                      |
| v.                     | : |                      |
|                        | : | **OPINION AND ORDER** |
| BIG LOTS STORES, INC., | : |                      |
|                        | : |                      |
| Defendant.             | : |                      |


This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 26), Plaintiff's Response in Opposition
(doc. 35), and Defendant's Reply (doc. 39).  The Court held a
hearing on this matter on October 7, 2009.  For the reasons
indicated herein, the Court GRANTS IN PART AND DENIES IN PART
Defendant's Motion.

## I.  Factual and Procedural Background

This case involves a twelve-year plus employee, Plaintiff
Juanita Winkelmann, who Defendant Big Lots, Inc. hired in 1994 at
the age of 62, who lost her job on August 21, 2006, after Plaintiff
allegedly failed to follow a sales procedure that resulted in a
$200 loss to Defendant (doc. 1).  Plaintiff claims her job history
shows positive performance evaluations for years, but everything
changed when Defendant put Kristen Earhart, a twenty-three year old
at the time, into the supervisory position of Assistant Manager
(Id.).  Earhart allegedly harrassed Plaintiff, asked Plaintiff on

a regular basis how much longer Plaintiff planned on working for Defendant, told Plaintiff she was making too much money, and critiqued Plaintiff for being unable to multi-task (doc. 35). Moreover, after Plaintiff's husband was diagnosed with terminal lung disease, Earhart allegedly repeatedly stated that Plaintiff did not know how much the company was paying for her benefits (Id.).

Plaintiff filed her discrimination charge with the EEOC on March 26, 2007, some 217 days after her termination. In her charge, Plaintiff indicated that it was not "filed for the purpose of electing an administrative remedy under state law" (doc. 35). A little over a year later, on June 19, 2008, Plaintiff filed the instant Complaint, bringing a claim for age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., a claim for age discrimination pursuant to Ohio Revised Code § 4112, and a claim for violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 (doc. 1). On November 24, 2008, the Court granted Plaintiff leave to amend her Complaint to add a claim for discrimination for association with a disabled person in violation of Ohio law (doc. 13). However, Plaintiff has abandoned such claim (doc. 35), as the Ohio discrimination statute, unlike federal law, contains no prohibition against associational discrimination. Smith v. Hinkle Manufacturing, Inc., 36 Fed. Appx. 825, 830-31 (6th Cir. 2002). In

her Amended Complaint Plaintiff seeks reinstatement to her employment, an award of all lost pay and benefits, compensatory damages, and other legal and equitable relief (doc. 14).

On June 19, 2009 Defendant filed its motion for summary judgment, contending there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law on all of Plaintiff's claims (doc. 26). Specifically, Defendant argues Plaintiff's age discrimination claims are barred by the statute of limitations, that Plaintiff lacks both direct and indirect evidence in support of all of her claims, and that Plaintiff cannot establish her claim of discrimination for association with a disabled person (<u>Id</u>.). Defendant cites to an alleged list of discipline and counseling it gave to Plaintiff through the years, which Plaintiff denies, and which culminated in the $200 error that Defendant claims justified Plaintiff's termination (<u>Id</u>.). In Defendant's view, Plaintiff lacks both direct and circumstantial evidence of discrimination, and in any event, her age discrimination claims are barred by the statute of limitations or subject to an election of remedies (<u>Id</u>.). Plaintiff responded (doc. 35), and Defendant replied (doc. 39), such that this matter is ripe for the Court's review.

## II. Applicable Law

### A. The Summary Judgment Standard

Although a grant of summary judgment is not a substitute

for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; <u>see also</u>, <u>e.g.</u>, <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464 (1962); <u>LaPointe v. United Autoworkers Local 600</u>, 8 F.3d 376, 378 (6th Cir. 1993); <u>Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.</u>, 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Fatton v. Bearden</u>, 8 F.3d. 343, 346 (6th Cir. 1993), <u>quoting</u> <u>in</u> <u>part</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see also</u> <u>LaPointe</u>, 8 F.3d at

378; <u>Garino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th

Cir. 1982); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th

Cir. 1989). The movant may do so by merely identifying that the

non-moving party lacks evidence to support an essential element of

its case. <u>See</u> <u>Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.</u>,

12 F.3d 1382, 1389 (6th Cir. 1993).

        Faced with such a motion, the non-movant, after

completion of sufficient discovery, must submit evidence in support

of any material element of a claim or defense at issue in the

motion on which it would bear the burden of proof at trial, even if

the moving party has not submitted evidence to negate the existence

of that material fact. <u>See</u> <u>Celotex</u>, 477 U.S. at 317; <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). As the "requirement [of

the Rule] is that there be no genuine issue of <u>material</u> fact," an

"alleged factual dispute between the parties" as to some ancillary

matter "will not defeat an otherwise properly supported motion for

summary judgment." <u>Anderson</u>, 477 U.S. at 247-248 (emphasis added);

<u>see</u> <u>generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879

F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence

of a scintilla of evidence in support of the [non-movant's]

position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-movant]." <u>Anderson</u>, 477

U.S. at 252; <u>see</u> <u>also</u> <u>Gregory v. Hunt</u>, 24 F.3d 781, 784 (6th Cir.

1994). Accordingly, the non-movant must present "significant

probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6ᵗʰ Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6ᵗʰ Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6ᵗʰ Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6ᵗʰ Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at

587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  <u>See</u> <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-455 (6th Cir. 1991).

**B.  Plaintiff's Discrimination Claims**

   **1.  Plaintiff's Age Discrimination Claim**

Plaintiff asserts age discrimination claims under both Ohio and federal law.  The same evidentiary framework applies to discrimination claims brought under the ADEA, and discrimination claims brought under Ohio state law.  <u>Allen v. Ethicon, Inc.</u>, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996).  Discrimination on the basis of age is contrary to both Ohio and federal law.  U.S.C. § 621 <u>et seq.</u>, O.R.C. § 4112.02(A).  Under these provisions, Plaintiff may assert a <u>prima facie</u> case through the presentation of either direct or indirect evidence.  <u>Allen</u>, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996).  In many cases, evidence of direct discrimination can be difficult to produce, so the law allows for a plaintiff to raise an inference of discrimination through circumstantial evidence. <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).  In the case at hand, Plaintiff does not proffer direct evidence of age discrimination.  Thus, the Court will focus upon circumstantial evidence in evaluating Plaintiff's <u>prima facie</u> case.

In order to prevail on a circumstantial evidence theory,

7

Plaintiff must establish a _prima_ _facie_ case of age discrimination by proving that (1) she was over forty, (2) she was qualified, (3) she suffered an adverse employment action, and (4) she was replaced by a younger person or treated differently than a similarly-situated younger employee. _McDonnell Douglas_, 411 U.S. 792. The _prima_ _facie_ case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." _Furnco Construction Corp. v. Waters_, 438 U.S. 567, 577 (1978). Establishment of the _prima_ _facie_ case in effect creates a presumption that the employer unlawfully discriminated against the employee. _Texas Dep't. Of Community Affairs v. Burdine_, 450 U.S. 248, 254 (1981).

After Plaintiff establishes a _prima_ _facie_ case, the burden shifts to Defendant, to rebut the presumption of discrimination by producing evidence that Plaintiff was terminated, or someone else was preferred, for a legitimate, nondiscriminatory reason. _Texas Dep't. Of Community Affairs_, 450 U.S. at 254. Defendant need not persuade the court that it was actually motivated by the proffered reasons. _Id_. _citing_ _Board of Trustees of Keene State College v. Sweeney_, 439 U.S. 24, 25 (1978).

It is sufficient if Defendant's evidence raises a genuine issue of fact as to whether it discriminated against the Plaintiff. _Texas Dep't. Of Community Affairs_, 450 U.S. at 254. To accomplish

this, Defendant must clearly set forth, through the introduction of admissible evidence, the reasons for Plaintiff's rejection. Id. at 255. The explanation provided must be legally sufficient to justify a judgment for the Defendant. Id. If Defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Id. Placing this burden of production on the Defendant thus serves simultaneously to meet Plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that Plaintiff will have a full and fair opportunity to demonstrate pretext. Id. at 255-56. The sufficiency of Defendant's evidence should be evaluated by the extent to which it fulfills these functions. Id. at 256.

### 2. Plaintiff's ERISA claim

A claim for interference with ERISA rights, absent direct evidence, involves the same sort of burden-shifting analysis applicable to age discrimination claims. Richter v. Local 407, Int'l Bhd. Of Teamsters, No. 98-4279, 2000 U.S. App. LEXIS 14528, *3 (6th Cir. June 20, 2000). ERISA provides that "it shall be unlawful for any person to discharge. . . a participant or beneficiary. . .for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. As such, according to the Sixth

Circuit, a <u>prima facie</u> case for an ERISA claim requires a Plaintiff to show there was 1) prohibited employer conduct, 2) taken for the purpose of interfering 3) with the attainment of any right to which the employee may become entitled. <u>Richter</u>, 2000 U.S. App. LEXIS 14528 at *4, <u>citing</u> <u>Walsh v. United Parcel Service</u>, 201 F.3d 718, 728 (6th Cir. 2000). Should the Plaintiff establish a <u>prima facie</u> case of interference with benefits, the burden shifts to the employer to establish a legitimate nondiscriminatory reason for its action, which, if established, the Plaintiff must prove is unworthy of credence or prove that interference with her benefits was a motivating factor in the employer's actions. <u>Id</u>.

**III.  The Parties' Arguments**

At the hearing on October 7, 2009, Defendant commenced by explaining the nature of its business, the role of Plaintiff, and its view of the case. Defendant explained that Big Lots is a national chain of closeout retail merchandise stores, including some stores that sell furniture. The merchandise is steeply discounted, and one of the major issues the company faces is "shrink" or loss of inventory through theft. Plaintiff worked at store 824, in Western Hills, Ohio, a store that has had high levels of shrink. The store was staffed with a hierarchy of employees: a manager, assistant managers, and then a series of hourly employees, including customer service specialists ("CSS"), who oversee sales clerks. Plaintiff started her employment as a sales clerk but

10

Defendant later promoted her to the CSS position.

Defendant stated that one of the responsibilities of a CSS is to monitor the departure of furniture from the store. After a sales clerk conducts a sale of furniture, it is the responsibility of the CSS to check the paperwork to ensure the correct merchandise is leaving the store, and to sign a log verifying the transaction.

Defendant stated in this case, Plaintiff failed in her responsibilities as a CSS in August 2008, because she did not verify a furniture transaction in which a sales clerk, Archie Jackson, made a mistake at the register. The mistake in question allowed a customer to only pay for the headboard of a bed, while the customer left the store with a footboard and rails as well, worth $200.00.

Defendant contended that Plaintiff made a false log entry that she had verified the transaction, and further contended Plaintiff had a history of problems, including at one point physically striking a manager. Defendant argued that Plaintiff even signed a statement acknowledging that she failed to comply with company policy with regards to the furniture transaction. As such, Defendant contended it had a legitimate non-discriminatory reason for its termination of Plaintiff. Defendant further argued that the store manager, Kristen Earhart, who allegedly made statements about Plaintiff's age, was not the decision-maker with

regards to Plaintiff's termination.

Plaintiff responded at the hearing that a videotape of the furniture transaction shows Plaintiff did actually check the receipt, and Plaintiff argued she was threatened with police involvement should she have refused to sign the statement admitting she violated policy. Moreover, Plaintiff argued she could not read the statement.

Plaintiff next recited a number of allegedly similarly-situated employees that made similar errors without being terminated. Plaintiff contends that a younger CSS, Michael Flinchum, made an error in an exchange that cost the store $111.00. Carrie Nelson, a CSS born in 1982, similarly lost a handheld computer device and printer without being terminated. Britney Thompson repeatedly sold furniture already tagged as sold and caused a loss of $60 to the store each time. In Plaintiff's view, she has plenty of indirect evidence through the McDonnell-Douglas framework so as to establish her claims of discrimination.

As for Defendant's argument that Kristen Earhart was not the decision-maker responsible for Plaintiff's termination, Plaintiff argues the decision-maker, Steve Littman, testified he made the decision after looking at the counselings and evaluation prepared by Earhart. Accordingly, contended Plaintiff, the record is clear that Earhart had more influence on Plaintiff's termination than anyone else.

The Court then queried Plaintiff regarding the statute of limitations. Plaintiff indicated that she originally filed her discrimination charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged violation. In the EEOC complaint, Plaintiff stated the charge was not "filed for the purpose of electing an administrative remedy under state law" (doc. 35). Plaintiff did not specify under which section of Ohio Revised Code § 4112 her state law claim for age discrimination arises. As such, invoking Reminder v. Roadway Express, No. 5:04-CV-02581, 2006 U.S. Dist. LEXIS 1899, *6 (N.D. Ohio, January 10, 2006), and noting that Ohio is a deferral state such that any charge filed with the EEOC is also filed by the EEOC with the Ohio Civil Rights Commission, Plaintiff contends a six-year statute of limitations applies to her state claims.

In Defendant's view, Plaintiff took steps to ensure that her discrimination charge was not filed with the Ohio Civil Rights Commission by stating her charge was not filed for electing a state administrative remedy. As such Defendant contends Plaintiff was required to file her Complaint within 180 days of her termination, and not within 300 days, which she would have been entitled to had she filed dually with the state agency.

## IV. Discussion

### A. Plaintiff's Claims Are Not Barred by Any Statute of Limitations or By an Election of Remedies

As an initial matter, the Court will address Defendant's argument that Plaintiff's case is barred by the statute of limitations. Under federal law, the filing deadline for a discrimination claim is extended to 300 days where the charge is also covered by state or local anti-discrimination law. EEOC v. Commercial Office Products Co., 486 U.S. 107, 122-125 (1988)(state time limits for filing discrimination claims do not determine the applicable federal time limit as the EEOC has neither the time nor the expertise to make such determinations under the varying laws of the many deferral states and has accordingly construed the extended 300-day period to be available regardless of the state filing)(citing 52 Fed. Reg. 10224 (1987)(complainants in deferral jurisdictions are entitled to the extended 300-day, Federal filing period regardless of whether their State or local charges were timely filed)), Melincoff v. East Norriton Physician Service, Inc., No. 97-4554, 1998 U.S. Dist. LEXIS 5416 *30, fn.13, and *35 (E.D. Pa., April 20, 1998)(citing cases and noting the Fifth, Fourth, and First Circuits have expressly adopted the view that the transmittal of the EEOC charge to the respective state agency, pursuant to a worksharing agreement, is a sufficient filing with the state agency for the purpose of using the 300-day federal filing deadline. Regardless of the state filing, the EEOC operates under the assumption that the 300-day federal filing deadline is available in a deferral state).

14

Plaintiff alleged in her briefing and at the hearing that Ohio is such a deferral state and Sixth Circuit authority has repeatedly acknowledged the worksharing agreement between the OCRC and the EEOC as part of the law of the Circuit. <u>Nichols v. Muskingum College</u>, 318 F.3d 674, 678-79 (6th Cir. 2003), <u>Welker v. Goodyear Tire Co.</u>, No. 96-3045, 1997 U.S. App. LEXIS 16392 *5 (6th Cir. 1992)(Ohio is a deferral state such that an ADEA complainant must file within 300 days of the discriminatory act).[1]

Here there is no dispute that Plaintiff filed her discrimination charge with the EEOC on March 26, 2007, some 217 days after her termination. As such, Defendant is incorrect that Plaintiff failed to file her charge in a timely matter. Ohio is a deferral jurisdiction, and as a matter of law, Plaintiff had 300 days to file her federal discrimination charge. The Court similarly rejects Defendant's position that Plaintiff somehow opted out of the 300-day limitations period by indicating her charge was not filed for the purpose of electing an administrative remedy under state law. Defendant in no way addressed Plaintiff's

---

[1] The Court notes <u>Berger v. Medina County Ohio Bd. Of Cty. Commrs.</u>, 295 Fed. Appx. 42 (6th Cir. 2008), in which the appeals court affirmed the dismissal of a discrimination case, placing the onus on the Plaintiff to allege the existence of a work agreement between the OCRC and the EEOC, despite the fact that such agreement has been acknowledged in the Sixth Circuit in previous decisions. In any event, such case is not on point, as in this case, Plaintiff has argued here in the district court that Ohio is a deferral state and the 300-day limitations period applies.

citation to the Reminder decision, 2006 U.S. Dist. LEXIS 1899, *6
(N.D. Ohio, January 10, 2006), in which the Court found it proper
to construe a Plaintiff's general allegation of age discrimination
in violation of Ohio law to permit application of the six-year
limitations periods of Ohio Revised Code sections 4112.14 and
4112.99. Such sections of the Ohio code do not involve
administrative remedies, but rather, civil actions, and therefore
Defendant was clearly on notice of Plaintiff's age discrimination
claims pursuant to Ohio law. There is no dispute that Plaintiff
filed her Complaint within two years of her termination, and as
such, her state law discrimination claims pursuant to Ohio Rev.
Code §§ 4112.14 and 4112.99 were filed within the applicable six-
year statute of limitations. Moreover, the Court finds well-taken
Plaintiff's position the filing of her charge with the EEOC, which
explicitly stated she was not electing administrative remedies,
preserved her right to seek a judicial remedy under state law.
Reminder, 2006 U.S. Dist. LEXIS 1899 at *33-34. The Court
therefore rejects Defendant's argument that Plaintiff's state
claims are barred as subject to an election of remedies.

**B. Plaintiff's Age Discrimination Claims Survive Defendant's
Challenge**

The second basic question before the Court is whether
Plaintiff has adequately pleaded circumstantial evidence of age
discrimination and ERISA discrimination. The Court finds no
genuine dispute that Plaintiff, who was 74 at the time of her

termination, is within the protected class.   Similarly, the fact that she worked for 12 years with the company shows she was objectively qualified for her position.   Evidence in the record shows she was working as a CSS for two years prior to her termination, and that in any event, she had performed the duties of a CSS prior to her promotion.   Assistant Manager Harris testified in deposition that Plaintiff's performance was consistent and had not changed since she received high marks on her appraisals.   With these facts, a reasonable jury could find Plaintiff was objectively qualified for her position.   <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 574-576 (6th Cir. 2003).   Finally, although Defendant argued none of the other employees that Plaintiff proffered as similarly-situated qualified as such, a reasonable jury could disagree.   Other younger employees in the CSS position made mistakes resulting in relatively small losses to the company, and they were counseled rather than terminated.   In addition, the video evidence is not clear that Plaintiff failed to check the receipt according to policy, and her testimony could be accepted by the jury that she was pressured into signing the statement that she did not comply with policy.   As such, a reasonable jury could find that Plaintiff was treated more harshly than younger CSS employees.

Because the Court finds Plaintiff can establish a <u>prima facie</u> case of age discrimination, Defendant must proffer a legitimate non-discriminatory reason for Plaintiff's termination.

Defendant cites to a long list of performance issues, even contending that Plaintiff physically struck a manager in 2001. Defendant argues Plaintiff was counseled for being rude to a customer, for failing to fill the pop machine, for failing to place returned merchandise on the shelves, and was poorly appraised on November 14, 2005 for having long customer lines as a cashier (doc. 26). In Defendant's view, the alleged failure to comply with company policy in verifying the furniture transaction was only the culmination of long-term employment problems.

In order to show that Defendant's proffered reason is pretext, Plaintiff must show that "the proffered reasons had no basis in fact, 2) the proffered reasons did not actually motivate the discharge, or 3) they were insufficient to motivate discharge." Manzer v. Diamond Shamrock Chemicals, Co., 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff argues that the proffered reasons, related to her job performance, have no basis in fact because the video of the furniture transaction is inconclusive, and because of her long history of good performance reviews (doc. 35). Plaintiff argues the proffered reasons did not actually motivate the discharge because there is ample evidence that when Kristen Earhart became Plaintiff's supervisor, Earhart began harassing Plaintiff by repeatedly asking Plaintiff when she would retire and asking Plaintiff about the cost of Plaintiff's company benefits (Id.). Plaintiff further argues that Earhart also issued numerous

18

unwarranted disciplinary counselings that reflected stereotypical thinking regarding older employees, including that Plaintiff failed to manage multiple tasks and that Plaintiff failed to take initiative (Id.). Finally, Plaintiff argues Defendant's proffered reasons were insufficient to motivate termination in light of all the similarly-situated younger employees that made similar or more serious mistakes or infractions but were not terminated (Id.).

Having reviewed this matter, the Court finds that a reasonable jury could find adequate evidence in the record to show Defendant's reasons for terminating Plaintiff were merely pretext for age discrimination. The jury could reasonably believe that Kristen Earhart's alleged age-related animus was reflected in the poor performance evaluations that clearly affected the ultimate decision-maker in Plaintiff's termination. The jury could reject Defendant's recitation of past performance issues as cherry-picked and reasonably believe the testimony and record evidence showing Plaintiff was a longstanding good employee of the company. Had such prior evidence truly served as a basis for Plaintiff's termination, she very well could have been terminated long before the events surrounding the furniture transaction. Instead, Plaintiff received positive evaluations and continued employment.

Finally, simply put, a jury might very well view the firing of a twelve-year employee over a $200.00 mistake as an overblown reaction when there were alternative remedies available.

19

Other employees were offered counseling. In other situations customers were contacted to reimburse lost amounts. Plaintiff was not even offered the chance to reimburse the mistake, which was shared to some extent by another employee, Archie Jackson. A jury might very well find suspect the fact that Jackson, even though a subordinate to Plaintiff at the time, was only shortly thereafter promoted to the position of Assistant Manager. The Court finds Plaintiff's position well-taken that she has proffered adequate evidence to support a finding of pretext for age discrimination.

**C.      Plaintiff's ERISA Discrimination Claim Survives Defendant's Challenge**

Plaintiff indicated at the hearing that there is no dispute the Plaintiff qualified for ERISA protection. The only real remaining question, therefore, is whether there is adequate evidence in the record such that a jury could find Plaintiff was discharged so as to interfere with Plaintiff's benefits. Plaintiff contends the record shows an inference of interference in Earhart's repeated comments regarding Plaintiff's use of company benefits after Plaintiff returned to work from a leave of absence following her husband's diagnosis for terminal lung disease. Defendant responded at the hearing that Earhart did not know nor would have any way of knowing what benefits were paid to Plaintiff or her husband, as the company is large, and none of the health insurance information is in Plaintiff's personnel file at the store. Defendant argues all such information is protected and there was no

way for Earhart to have access to such information.

The Court finds that Earhart's alleged comments, if a jury would believe Plaintiff's testimony, could support a claim for ERISA discrimination. Earhart may not have had access to specific information regarding the costs of Plaintiff's benefits, but the fact is, Earhart allegedly remarked about such costs in a manner that could be viewed to show she desired to interfere with Plaintiff's benefits so as to cut costs. The Court has already found that Defendant's proffered legitimate nondiscriminatory reason for Plaintiff's termination could be found pretextual by a jury, and therefore finds Plaintiff has a viable claim for ERISA discrimination.

## V. Conclusion

Having reviewed the parties' briefing in this matter, and having heard their respective arguments at the October 7, 2009 hearing, the Court concludes that Plaintiff's state and federal age discrimination claims, as well as her claim for ERISA interference, survive Defendant's motion for summary judgment. As stated herein, such claims also survive Defendant's challenges based on the statute of limitations and on the election of remedies. However, the Court notes that Plaintiff has conceded that her claim for discrimination for association with a disabled person in violation of Ohio law fails as a matter of law. Smith, 36 Fed. Appx. 830-31 (6th Cir. 2002). As such, the Court finds Defendant's

Motion appropriate as to this claim.

      Accordingly, the Court GRANTS IN PART Defendant's Motion for Summary Judgment (doc. 26) as to Plaintiff's state law claim for discrimination for association with a disabled person, but DENIES the balance of Defendant's motion with regard to Plaintiff's state and federal age discrimination claims, and with regard to Plaintiff's claim for interference with ERISA rights. The Court further SETS this matter for final pretrial conference at 2:00 P.M. on January 19, 2010, and for three-day jury trial, on an on-deck basis, to commence February 16, 2010.


      SO ORDERED.

Dated: November 10, 2009    /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge